negligence or breach of statutory duty) under, in connection with or arising out of the supply or non-supply of Services or this Agreement shall be limited to $150,000.00 in such Calendar Year.

12.4. Each party represents and warrants to the other party that it has taken legal advice as to the effect of clauses 12.1-12.3 and that it considers their effect to be reasonable given all the circumstances existing at the date of this Agreement.

12.5. Except as expressly set out in this Agreement, all representations, warranties, terms and undertakings, express or implied, statutory or otherwise in respect of this Agreement are expressly excluded.

12.6. Operator and COLT shall at all times be under a duty to mitigate any losses suffered by it.

12.7. Each provision of this Clause 12 is to be construed as a separate provision applying and surviving even if one or more of the other provisions of this Clause is held inapplicable or unreasonable.

## 13. Termination and Suspension

13.1. Either party may terminate this Agreement by giving notice in writing:

13.1.1. if the other party commits a material breach of this Agreement and (if the breach is capable of remedy) fails to remedy the breach within thirty (30) days after receipt of written notice by the other requesting it to do so;

13.1.2.  persistent breach of the SLA;

13.1.3. if the other party makes an arrangement or composition with its creditors generally or makes an application to a court of competent jurisdiction for protection from its creditors generally or a resolution is passed by it for its winding up; a court of competent jurisdiction makes an order for its winding-up or dissolution, an administration order is made in relation to it or a receiver or administrative receiver is appointed over or a person legally appointed to do so takes possession of or sells any of its assets or its undergoes any analogous insolvency event under the laws of its country of incorporation;

13.1.4. if the other party commits a material breach of any licence under any applicable legislation or any such licence of either party to provide the Services is revoked or terminated and is not immediately replaced;

13.1.5.  an event of Force Majeure continues for more than three (3) months;

13.1.6. the other party fails to purchase any Services for a period of three (3) consecutive months; or

13.1.7. in accordance with Clause 2 above.

13.2. Either party shall be entitled immediately to suspend this Agreement and/or the provision of any Services on giving notice to the other party in the event that it is entitled to terminate this Agreement. Any exercise of such right of suspension shall not prejudice that party's right subsequently to terminate this Agreement.

13.3. Either party may suspend this Agreement and/or the provision of Services in the event that the other party's aggregate payment default exceeds their designated Credit Limit.

13.3.1. Suspension must be warned and notice in writing allowing for a grace period of 5 bank days.

## 14. Credit Limit

14.1. If either party's aggregate payment default exceeds the aggregate credit limit, the defaulting party shall upon receipt of a communication advise on mitigation measures to

the other part by telegraphic transfer (or such other method as agreed by the parties) of such amount required to:

- 14.4.1 reduce its Aggregate Payment Liability to less than the Credit Limit; and
- 14.4.2 to ensure that its Aggregate Payment Liability shall not exceed the Credit Limit until the next invoice is satisfied.

14.5 For the purposes of this Agreement, such monies shall become due and payable immediately on receipt of a written demand. Non-compliance shall be considered a material breach of this Agreement.

14.6. Either party may revise the Credit Limit of the other party by notification in writing. Notification of any such new Credit Limit must be made at least 30 days before any suspension under Clause 13.3 based on the new limit takes effect, and in adherence to the provisions of 13.3.1.. Until any new Credit Limit takes effect, the old Credit Limit shall remain in force.

## 15. Consequences of Termination

15.1 Termination or expiry of this Agreement shall not affect any accrued rights or obligations or those intended to be of a continuing nature or to come into force upon termination or expiry.

15.2 Upon termination or expiry, each party shall return to the other all copies of documentation which are designated or deemed confidential and each party shall return to the other that proportion of any payment made in advance for the Services.

## 16. Assignment

Neither party shall assign or transfer any of its rights or obligations under this Agreement.

## 17 Force Majeure

Save for payment obligations, neither party shall be deemed in default of any of its obligations under this agreement if, and to the extent that, performance of such obligation is prevented or delayed by any event of Force Majeure, provided that such event of Force Majeure is not caused by the negligence of the affected party, and such party has notified the non-affected party in writing of the event of Force Majeure. The affected party shall use all reasonable endeavours to avoid or minimise the effects of an event of Force Majeure. Upon the occurrence of an event of Force Majeure, the time for performance shall be extended for the period of delay or inability to perform due to such occurrence.

## 18 Notices

13.4 Unless provided otherwise in this Agreement all notices shall be in writing. Notice shall be deemed validly delivered as follows:

| Method | When valid / served | CDC1 Address for Service | Fixaline Address for Service |
|---|---|---|---|
| Hand | Immediately | CDC1 Carrier Services<br>CDC1 Telecom A/S<br>Fuglebakken Cirkusbygningen | Fixaline Communications International |

|  |  | Gade 55, DK-2450 Cph. SV | 28th Floor New York, New York 10155 |
|---|---|---|---|
| First Class Pre-paid mail | 2 days after posting in DK, 10 days after posting in Europe or North America. | COLT Carrier Services COLT Telecom A/S Borgmester Christiansens Gade 55 DK-2450 Cph. SV | Frontline Communications International, Inc. 150 East 58th Street 28th Floor New York, New York 10155 |
| Fax | When successful transmission report generated. | +45 70 21 23 31 | 212-688-2662 |

18.2 Addresses for service may be changed by valid notification of the other party of the new address of service.

## 20. Entire Agreement

This Agreement is the exclusive statement of the agreement between the parties related to the subject matter of this Agreement. It supersedes all understandings and prior agreements, whether oral or written, between the parties in respect of the subject matter of this Agreement. Each party agrees that they did not rely on any statement made by the other party before the signature of this Agreement and waives any remedy which, but for this Clause 20 might otherwise be available to them in respect of any untrue statement (whether made innocently or negligently but not fraudulently) before the signature of this Agreement.

## 21. Variation

No variation of this Agreement shall be valid unless it is in writing and signed by or on behalf of each of the parties.

## 22. Waiver

Failure or delay in exercising any right or remedy under this Agreement shall not constitute a waiver or a waiver of any other right or remedy and no single or partial exercise of any right or remedy under this Agreement shall prevent any further exercise of the right or remedy or the exercise of any other right or remedy.

## 23. No Third Party Rights

Nothing in this Agreement shall create any rights for or enforceable by any third party.

## 24. Choice of Law and Arbitration

24.1 The Agreement shall be construed and interpreted in accordance with and governed by the laws of England to the exclusion of any choice of

24.2. Each party shall devote all reasonable efforts to amicably resolve any disputes between them concerning the respective rights and obligations under this Agreement.

24.3. Either party may, by written notice to the other, have such disputes referred to their respective senior executives for attempted resolutions in good faith. If such resolution is not reached following the written notice hereof, then such dispute shall be submitted to arbitration pursuant to clause 24.3.

24.4. If the parties are unable to resolve a dispute in accordance with clause 24.2 the dispute will be resolved or settled at the written request of either party by arbitration. Such arbitration is to be conducted in accordance with the Rules of Procedure (the "Rules") established by the ICC's International Court of Arbitration (ICA).

24.5. The Parties hereby agree to establish a tribunal or Dispute Review Board ('DRB') in accordance with the 'Rules.' The DRB shall be composed of three (3) arbitrators. Each party shall appoint one (1) arbitrator, and the ICA shall appoint a third (3rd) arbitrator, according to the Rules. The ICA appointed arbitrator shall be the Chairman of the arbitration tribunal

24.6. The place of arbitration shall be London, England.

24.7. The language of arbitration shall be the English language.

25.0 Signatures

25.1 Each party declares that the following signatories are mandated to legally bind their respective Company without condition or reservation. For purposes of documentation, faxed copies of the signed Agreement will be considered as originals.

EXECUTED:

SIGNED for and on behalf of COLT TELECOM A/S    Dated: 08/08/2004

Signature:

Name and position: Morten Singer / CEO                  Michael Hamburg, Carrier Sales Mgr

SIGNED for and on behalf of Pacific Crossing Telecommunications, Inc.

Signature:

Name and position: Wesley Cox, CEO

*In Commercial Confidence*

Enclosure:   1 Service Level Agreement
             2 Point of connection

*Schedule 1*

## Service Level Agreement

### Purpose of SLA

This service level agreement ("SLA") sets out the levels of service provided by one party ("Terminating Party") to the other party ("Originating Party") under this Agreement and the consequences of failures to meet those service levels.

### Service Definition

The Services to which this SLA applies are the Call Conveyance Services provided by the Terminating Party to the Originating Party.

### Service Metrics

The quality of the Services provided by the Terminating Party to the Originating Party shall be measured against the following objective criteria:
- answer-seizure ratio ("ASR"); and
- mean fault clearance time ("MFCT").

### ASR

ASR is the percentage ratio of:
- the number of Calls to a country destination in a calendar month answered by a natural person; to
- the number of Calls initiated to such destination in such calendar month.

### MFCT

The MFCT for a month is the sum of all Correction Times for such month divided by the number of Service Affecting Faults in such month.

A Service Affecting Fault is any failure of the Terminating Party's transmission or terminating equipment which causes full or partial loss of signals in one or both transmission directions. Examples include: no incoming Calls; no outgoing Calls; noise on every Call; post dial delay on every Call; echo on every Call.

For any Service Affecting Fault the Correction Time shall be the time in minutes between:
- the time when the fault is registered by the Originating Party with the Terminating Party; and
- the time the fault is resolved and confirmed as resolved by the Originating Party or the Terminating Party.

### Target Service Levels

The target ASR percentages (which should be equalled or exceeded) for each destination are as agreed between the parties from time to time.
The target MFCT is two hours or less in each calendar month.

### Consequences of Failure to Meet Service Targets

If any target service level for a destination is not met during any one calendar month, the Agreement may be terminated by the Originating Party by giving notice to the Terminating Party.

*In Commercial Confidence*

## Schedule 2

### Point of connection

COLT Telecom:   POC:

Frontline:   POC:   Frontline Rack
                    60 Hudson St. Suite 1107
                    New York, New York 10155